## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

---------------------------------------------------

KELLY WEBSTER,

      Plaintiff,

      v.

LOUISIANA WOMEN'S HEALTHCARE
ASSOCIATES, LLC,

      Defendant.

---------------------------------------------------

**CASE NO. 19-cv-_____**

**JUDGE _____**

**MAGISTRATE JUDGE _____**

**JURY TRIAL DEMANDED ON
SPECIFIC ISSUES**

## <u>COMPLAINT</u>

**BIZER & DEREUS, LLC**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Emily A. Westermeier (LA # 36294)
ewest@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

## PRELIMINARY STATEMENT

1.      Kelly Webster is a Deaf individual who communicates primarily in American Sign Language ("ASL"). Ms. Webster is not fully proficient in English, and has difficulty reading complex terminology and documents in written English. For several years Ms. Webster has been a patient at Louisiana Women's Healthcare. This action concerns the lack of equal access and accommodations for Ms. Webster at Louisiana Women's Healthcare. The staff and employees at Louisiana Women's Healthcare have failed to provide Ms. Webster with the necessary interpretation and communication services, and thereby failed to provide her equal access afforded to hearing persons in a medical setting.

2.      ASL and English are two completely distinct languages that are mutually unintelligible.  They are as different from one another as English is from Russian.

3.      Many Deaf individuals, including Ms. Webster, do not have full knowledge of written English. Indeed, the median reading comprehension level in English of Deaf high school graduates is fourth grade. This is because English is generally a second language (after ASL or another form of sign language) for individuals who are born Deaf or become Deaf before acquiring language. In addition, many Deaf people acquire English as their second language later in life, and well past the critical developmental period of language acquisition. Further, while a hearing person could easily ask an employee or staff member to explain an unknown medical word or phrase, a Deaf person is unable to ask for assistance in understanding unknown English words without the aid of a sign language interpreter or other auxiliary aid.

4.      Lip-reading, the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct doctor-patient communication through a qualified sign language interpreter. Only a small

amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips.

5.      Moreover, passing shorthand notes and/or communicating strictly with hand gestures is not equivalent to the use of language to communicate information, particularly that which is complex or pertains to medical care.

6.      Video Remote Interpreting (VRI) is a videotelecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter.

7.      Ms. Webster brings this lawsuit seeking injunctive and declaratory relief and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the Americans With Disability Act, 42 U.S.C. § 12181 ("ADA"); Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116. Ms. Webster also seeks compensatory and nominal damages pursuant to the Rehabilitation Act and Section 1557.[1]

8.      With regards to Ms. Webster's request for nominal damages, it is Ms. Webster's position that an award of nominal damages would confer significant civil rights to the public, as a judgment in her favor against Defendant, regardless of the amount, would deter Defendant from discriminating against deaf individuals in the future.

## THE PARTIES

9.      Plaintiff Kelly Webster (hereinafter "Ms. Webster") brings this action and is an individual residing in Denham Springs, Louisiana. Ms. Webster communicates primarily in ASL

---

[1] Ms. Webster recognizes that money-damages are not available under Title III of the ADA.

and is substantially limited in the major life activities of hearing and speaking and is a qualified

person with a disability within the meaning of the ADA, RA, and Section 1557.

10.     Defendant Louisiana Women's Healthcare Associates, LLC ("Defendant") is a

limited liability company residing in Louisiana, with the domicile of 500 Rue De La Vie, Baton

Rouge, Louisiana 70817. Defendant owns, leases, and/or operates Louisiana Women's

Healthcare, which is located at 500 Rue De La Vie, Baton Rouge, Louisiana 70817. Defendant is

operating a place of public accommodation under federal antidiscrimination laws and is the

recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements,

thus making Defendant subject to the requirements of the ADA, RA, and Section 1557.

## JURISDICTION & VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1343 for Ms. Webster's claims arising under federal law.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because

Defendant committed discriminatory acts within the jurisdiction of this District and a substantial

part of the events that give rise to the claims occurred in this District.

## STATEMENT OF FACTS

13.     Ms. Webster is a Deaf individual who communicates primarily through ASL.

While Ms. Webster can read and communicate basic information through handwriting or text

messages, any communication involving complex topics, especially medical topics, necessitates

the use of ASL.

14.     Specifically, Ms. Webster requires auxiliary aids and services to communicate in

an equivalent manner to non-disabled, hearing persons, in a medical setting. Ms. Webster

requires a sign language interpreter in order to understand doctors and nurses and to assist her

with asking questions in ASL about the meaning of complex documents that are written in English and documents that use advanced terminology.

15.    Ms. Webster has knowledge of some written English.  However, she is not fully proficient in comprehending written English and cannot participate in long discussions in English.

16.    Since 2015, Ms. Webster has been a patient of Dr. O'Neil Parenton at Louisiana Women's Healthcare. Ms. Webster had annual appointments with Dr. Parenton on April 6, 2016, April 7, 2017, April 9, 2018, and April 10, 2019.

17.    Prior to every appointment at Louisiana Women's Healthcare, Ms. Webster would notify Defendant that she was Deaf and request that a sign language interpreter be provided for her appointment.

18.    Therefore, Defendant had explicit knowledge and notice that Ms. Webster needed interpreting services.

19.    During Ms. Webster's 2015 appointment at Louisiana Women's Healthcare, she was provided with an in-person sign language interpreter. However, beginning with her April 6, 2016 appointment, Ms. Webster has not been provided with an interpreter for any of her subsequent appointments at Louisiana Women's Healthcare.

20.    Prior to the April 6, 2016 appointment, Ms. Webster specifically requested that a sign language interpreter be provided so that she could communicate with her healthcare providers. Ms. Webster was assured by an employee of Louisiana Women's Healthcare that an interpreter would be scheduled for her appointment. However, when Ms. Webster arrived at Louisiana Women's Healthcare for her April 5, 2016 appointment, no interpreter was present.

Ms. Webster was forced to lip-read and/or write notes back and forth with the doctor and other medical staff at Louisiana Women's Healthcare.

21.    Prior to the April 7, 2017 appointment, Ms. Webster again requested a sign language interpreter so that she could communicate with her healthcare providers. Ms. Webster was assured by an employee of Louisiana Women's Healthcare that an interpreter would be scheduled for her appointment. However, when Ms. Webster arrived at Louisiana Women's Healthcare for her April 7, 2017 appointment, no interpreter was present. Ms. Webster was again forced to lip-read and/or write notes back and forth with the doctor and other medical staff at Louisiana Women's Healthcare.

22.    Prior to the April 9, 2018 appointment, Ms. Webster once again requested that a sign language interpreter be provided so that she could communicate with her healthcare providers. Ms. Webster was again assured by an employee of Louisiana Women's Healthcare that an interpreter would be scheduled for her appointment. However, when Ms. Webster arrived at Louisiana Women's Healthcare for her April 9, 2018 appointment, no interpreter was present. Ms. Webster was forced to lip-read and/or write notes back and forth with the doctor and other medical staff at Louisiana Women's Healthcare.

23.    Ms. Webster's most recent appointment with Dr. Parenton was on April 10, 2019. When Ms. Webster called Louisiana Women's Healthcare via Video Relay Service to make her April 10, 2019 appointment, Ms. Webster reminded Louisiana Women's Healthcare that she was Deaf and needed a sign language interpreter to be able to communicate during her appointment. The individual scheduling the appointment assured Ms. Webster that they would schedule an interpreter for her appointment. Two days before her appointment, Ms. Webster called Louisiana

Women's Healthcare to ensure that an interpreter would be present, and was again assured that an interpreter had been scheduled.

24.     When Ms. Webster arrived for her April 10, 2019 appointment with Dr. Parenton, there was no sign language interpreter present. Ms. Webster asked where the interpreter was, but Defendant's staff told her that there was no sign language interpreter. Defendant's staff attempted to communicate with Ms. Webster by speaking to her, but she was unable to understand them and/or lip-read. Ms. Webster was forced to write notes back and forth with the doctor and other medical staff at Louisiana Women's Healthcare.

25.     During her 2016, 2017, 2018, and 2019 appointments at Louisiana Women's Healthcare, Ms. Webster needed a sign language interpreter to communicate with Dr. Parenton and other staff at Louisiana Women's Healthcare. Instead of providing her with an interpreter, the healthcare providers attempted to communicate by handwriting notes or lip-reading.

26.     Defendant did not supply a VRI device to communicate with Ms. Webster.

27.     The methods of communication used by Defendant to communicate with Ms. Webster—handwritten notes and forcing her to try to lip-read—were not appropriate under the circumstances and did not provide Ms. Webster with communication equivalent to that provided to hearing persons. These methods of communication did not allow her to fully understand and discuss her condition, treatment options, the medications she was taking, likely outcomes, or alternatives to prescription medications.

28.     Without a sign language interpreter, Ms. Webster was unable to fully understand the nature, scope, and seriousness of her medical conditions.

29.     During her appointments, Ms. Webster wanted to ask questions about her healthcare, but was unable to without a sign language interpreter.

30.     Upon information and belief, over the course of her treatment, Ms. Webster was given documents to sign. However, Defendant did not provide Ms. Webster with a sign language interpreter to translate these documents for Ms. Webster. Without the aid of a qualified sign language interpreter, Ms. Webster was not able to fully understand the content of these documents.

31.     Ms. Webster does not know what information she missed when the staff tried to communicate via handwriting notes and lip-reading.

32.     Defendant's failure to provide Ms. Webster with effective auxiliary aids and services caused Ms. Webster to experience fear, anxiety, emotional distress, loneliness, isolation, segregation, frustration, invasion of her civil rights, denial of self-determination, mental anguish, embarrassment, inconvenience, indignity, and/or humiliation.

33.     Defendant, through its staff, employees, nurses, and/or doctors, knew its obligations under the ADA and Section 504 of the Rehabilitation Act to provide accommodations to individuals with disabilities, including individuals who are deaf, and to develop policies to promote compliance with these statutes.

34.     Defendant, through its staff, employees, nurses, and/or doctors, knew or should have known that the actions and/or inactions of its staff created an unreasonable risk of causing Ms. Webster greater levels of fear, anxiety, emotional distress, loneliness, isolation, segregation, frustration, invasion of her civil rights, denial of self-determination, mental anguish, embarrassment, inconvenience, indignity, and/or humiliation than a hearing person would be expected to experience.

35.     The harm sustained by Ms. Webster herein is the expected and foreseeable consequence of Defendant's failure to comply with the requirements and mandates of federal

civil rights law. The statute and accompanying regulations exist to ensure that individuals with disabilities who have communication limitations will have equal access to places of public accommodations. When Defendant failed to adhere to its obligations under these regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Ms. Webster in this lawsuit.

36.     Despite Defendant's explicit knowledge of its obligation to accommodate persons with disabilities—including individuals that are Deaf—Defendant did not take adequate steps to ensure that it communicated with Ms. Webster in a manner equivalent to hearing persons.

37.     Defendant discriminated against Ms. Webster with deliberate indifference to her disability and related communication needs.

38.     Based on the facts alleged above, Defendant intentionally discriminated against Ms. Webster.

39.     Further, Defendant was purposeful in its choices, which is sufficient to constitute intentional discrimination under the RA and ACA.

40.     The harm sustained by Ms. Webster herein is the expected and foreseeable consequence of Defendant's failure to comply with the requirements and mandates of the RA and ACA. These statutes and accompanying regulations exist to ensure that those with communication limitations will have equal access to places of public accommodations. When Defendant failed to adhere to its obligations under these regulations, it was imminently foreseeable that those with disabilities would sustain the exact harms alleged by Ms. Webster in this lawsuit.

41.     By and through Defendant's failure to make its healthcare services meaningfully accessible to individuals who are Deaf, Defendant has committed disparate impact

discrimination sufficient to state a claim for damages under the RA and ACA.

## CLAIM I: VIOLATIONS OF TITLE III OF THE
## AMERICANS WITH DISABILITIES ACT

42.     Ms. Webster repeats and realleges paragraphs 1-41 in support of this claim.

43.     At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et

seq. has been in full force and effect and has applied to the Defendant's conduct.

44.     At all times relevant to this action, the United States Department of Justice

regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and

effect and have applied to the Defendant's conduct.

45.     At all times relevant to this action, Ms. Webster has been substantially limited in

the major life activities of hearing and communicating, and is an individual with a disability

within the meaning of the ADA, 42 U.S.C. § 12102(2).

46.     The Defendant owns and operates a place of public accommodation within the

meaning of 42 U.S.C. § 12181(7)(F).

47.     Title III of the ADA provides that "No individual shall be discriminated against

on the basis of disability in the full and equal enjoyment of the goods, services, facilities,

privileges, advantages, or accommodations of any place of public accommodation by any person

who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §

12182(a).

48.     Title III of the ADA further provides that "[i]t shall be discriminatory to subject

an individual … on the basis of disability … to a denial of the opportunity of the individual … to

participate in or benefit from the goods, services, facilities, privileges, advantages, or

accommodations of an entity." 42 U.S.C. § 12182(b)(1)(A)(i).  Moreover, Title III of the ADA

similarly provides that "[i]t shall be discriminatory to afford an individual … on the basis of a

disability … with the opportunity to participate in or benefit from a good, service, privilege, advantage, or accommodation that is not equal to that afforded to other individuals." *Id.* at § 12182(b)(1)(A)(ii).

49.    Federal regulations implementing Title III of the ADA provide that a public entity "shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

50.    Federal regulations implementing Title III of the ADA further provide that a public entity "shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services."  28 C.F.R. § 36.303(a).

51.    Similarly, these federal regulations state that a public entity "shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities…" 28 C.F.R. § 36.302.

52.    Additionally, the ADA prohibits retaliation against "any individual because such individual has opposed any act or practice made unlawful [under the statute]."  42 U.S.C. § 12203(a).  Similarly, the ADA states that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of … any right granted or protected by this [statute]."  *Id.* at § 12203(b).

53.    Based on the above allegations, the Defendant discriminated against Ms. Webster on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

54.    As set forth above, absent injunctive relief there is a clear risk that the Defendant's actions will recur and cause Ms. Webster additional injury.

55.     Ms. Webster is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

## CLAIM II: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

56.     Ms. Webster repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

57.     At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendant's conduct.

58.     At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to Defendant's conduct.

59.     At all times relevant to this action, Ms. Webster had substantial limitations to the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

60.     At all times relevant to this action, Defendant offered a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

61.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

62.     Defendant discriminated against Ms. Webster, solely on the basis of disability, by denying her equal access to the services, programs, and benefits the Defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure communication equivalent to that provided to hearing persons, in violation of 29 U.S.C. § 794.

63.     Defendant also discriminated against Ms. Webster, solely on the basis of disability, by denying her reasonable accommodation requests, in violation of 29 U.S.C. § 794.

64.     Ms. Webster is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendant's discriminatory conduct and deliberate indifference alleged herein, pursuant to 29 U.S.C. § 794(a).

65.     Ms. Webster is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a).

### CLAIM III: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

66.     Ms. Webster repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

67.     At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116 was in full force and effect, and applied to Defendant's conduct.

68.     At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

69.     At all times relevant to this action, Ms. Webster had substantial limitations to the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 USC § 18116.

70.     At all times relevant to this action, Ms. Webster's primary language for communication was ASL, and not English; Ms. Webster has limited ability to read, write, speak, or understand English, and was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

71.     At all times relevant to this action, Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is operating health programs or activities receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

72.     Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

73.     Defendant discriminated against Ms. Webster, solely on the basis of disability, by denying her equal access to the services, programs, and benefits that Defendant offered to other individuals and by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1557, 42 U.S.C. § 18116.

74.     Defendant discriminated against Ms. Webster by failing to ensure equivalent communication to that provided hearing persons, through its refusal to provide qualified sign language interpreters on-site and/or through VRI machines.

75.     Defendant discriminated against Ms. Webster by denying her requests for reasonable accommodations.

76.     Ms. Webster is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendant's discriminatory conduct as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

77.     Ms. Webster is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a).

## PRAYER FOR RELIEF

**WHEREFORE,** Ms. Webster respectfully prays that this Court grant the following relief against Defendant:

A.    Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's policies, procedures, and practices subjected Ms. Webster to unlawful discrimination in violation of the RA and Section 1557;

B.    Issue an injunction ordering the Defendant:

     i.    to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Ms. Webster or other Deaf individuals by failing to provide accommodations in the form of a sign language interpreter and other appropriate auxiliary aids and services;

     ii.    to develop, implement, promulgate, and comply with a policy requiring that when a Deaf individual requests an in-person interpreter for effective communication, one will be provided as soon as practicable in all services offered by the Defendant;

     iii.    to develop, implement, promulgate, and comply with a policy to ensure that the Defendant will notify individuals who are Deaf or hard of hearing of their right to accommodations in the form of a sign language interpreter and other appropriate auxiliary aids and services. This notification will include posting explicit and clearly worded notices that the Defendant will provide sign language interpreters, videophones, and other communication services to ensure equal access for Deaf persons;

      iv.     to develop, implement, promulgate, and comply with a policy to ensure that Deaf individuals are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

      v.     to create and maintain a list of sign language interpreters and ensure availability of such interpreters at any time of day or night;

      vi.     to train all its employees, staff, and other agents on a regular basis about the rights of individuals who are Deaf under the ADA, RA, and ACA; and

      vii.     to train all its employees, staff, and other agents on a regular basis about how to obtain interpreters when reasonably requested by Deaf individuals.

C.     Award to Ms. Webster:

      i.     Compensatory and nominal damages pursuant to the RA for damages incurred from December 17, 2018 to the present,

      ii.     Compensatory and nominal damages pursuant to the ACA for damages incurred from December 17, 2015 to the present,

      iii.     Reasonable costs and attorneys' fees pursuant to the RA and ACA;

      iv.     Interest on all amounts at the highest rates and from the earliest dates allowed by law;

      v.     Any and all other relief that this Court finds necessary and appropriate.

## **DEMAND FOR JURY TRIAL**

Ms. Webster demands trial by jury on the issues of (1) the injuries she suffered as a result of Defendant's discriminatory conduct; and (2) the quantum of damages that should be awarded.

Dated: December 17, 2019

Respectfully Submitted,

**BIZER & DEREUS, LLC**
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Emily A. Westermeier (LA # 36294)
ewest@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By:     /s/ Emily A. Westermeier
            Emily A. Westermeier